IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

_____

PLASMA AIR INTERNATIONAL, INC., :

    Plaintiff,                           :        Civil Action No: 3:15-cv-01054 –RNC

v.                                             :

GLOBAL PLASMA SOLUTIONS, LLC, :

    Defendant.                         :

_____

**FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT
OF PATENT INVALIDITY AND UNFORCEABILITY**

Plaintiff Plasma Air International, Inc. ("Plaintiff" or "Plasma Air") files this First Amended Complaint for declaratory judgment of invalidity and unforceability against Defendant Global Plasma Solutions, LLC ("Defendant" or "GPS"). Plasma Air alleges as follows:

**Nature of the Action**

1. This is a civil action arising under the patent laws of the United States, Title 35, United States Code, seeking a declaration of unenforceability and invalidity of U.S. Patent No. 9,025,303 ("the '303 Patent") (a copy of the '303 Patent is attached hereto as Exhibit A).

2. According to the cover page of the '303 Patent, the patent issued on May 5, 2015.

1

3.      The '303 Patent issued based on United States Patent Application Serial No. 14/021,507 ("the '507 Application") filed on September 9, 2013. The '507 Application was published as United States Publication No. 2014/0078639 ("the '639 Publication").

4.      The '303 Patent purports to claim an ion generating device.

5.      According to the cover page of the '303 Patent, the patent is a continuation application of United States Patent Application Serial No 12/578,753 ("the '753 Application") filed on October 14, 2009, which is now U.S. Patent No. 8,564,924 ("the '924 Patent").

6.      However, according to Col. 1 of the '303 Patent, the '507 Application is a continuation-in-part of '753 Application.

7.      None of the figures of the '303 Patent is the same as any of the figures of the '753 Application.

8.      The '303 Patent includes new description that was not in the '753 Application.

9.      The claims of the '303 Patent are directed to the new description and new figures and are not supported by the '753 Application and thus are not entitled to the claim of priority, but rather limited to the actual filing date of September 9, 2013.

10.     Prior to September 9, 2013, Plasma Air developed and sold an ion generating device, Plasma Air Model No. PA 600.

11.     By letters of April 10, 2014 and December 2, 2014, GPS contends that Plasma Air copied a GPS product purportedly covered by the '639 Publication.  The December 2, 2014 letter specifically accuses the Plasma Air Model PA 600 as being a direct copy of the device disclosed in the '639 Publication, demands sales of the Model PA 600 cease and

desist and to account for all sales of the Model PA 600. Copies are attached as Exhibits B and C respectively.

12. GPS's demand to cease and desist all sales, which is tantamount to a claim of infringement, places a cloud of legal uncertainty over Plasma Air's business operations and sales of Plasma Air Model No. PA 600.

13. To remove this cloud of uncertainty, Plasma Air seeks a declaration that the claims of the '303 Patent are invalid and unenforceable.

## The Parties

14. Plaintiff Plasma Air is a corporation organized and existing under the laws of the State of Connecticut, having a principal place of business at 35 Melrose Place, Stamford CT 06902.

15. Upon information and belief, Defendant GPS is a limited liability company organized and existing under the laws of the State of Georgia, having its principal office at 10 Mall Terrace, Building C, Savannah, Georgia 31406.

## Subject Matter Jurisdiction

16. This action arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and under the patent laws of the United States of America, Title 35 of the United States Code. The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

## Personal Jurisdiction

17. This Court has personal jurisdiction over GPS in this action on grounds that, upon information and belief, GPS transacts business within the State of Connecticut.

18. GPS maintains a network of residential GPS certified contractors.

19. GPS's website provides a means to search for a GPS certified contractor by zip code.

20. GPS has at least one certified contractor in the State of Connecticut, whom, upon information and belief, markets and sells GPS products to residents of the State of Connecticut.

21. Upon information and belief, GPS sells its products to certified contractors in the State of Connecticut.

## Venue

22. Venue is proper in the District of Connecticut pursuant to 28 U.S.C. § 1391.

## Background

### The 9,025,303 Patent

23. United States Patent Application Serial No. 14/021,507 ("the '507 Application") was filed on September 9, 2013. The '507 Application published as the '639 Publication on March 20, 2014.

24. According to United States Patent and Trademark Office ("USPTO") records, GPS is the assignee of the '507 Application.

25.     According to USPTO records, the '507 Application was filed with an Application Data Sheet ("ADS") identifying the application as a continuation of United States Patent Application Serial No. 12/578,753 ("the '753 Application") filed on October 14, 2009 rather than a continuation-in-part application.

26.     The filing of an ADS with an application is required by 37 C.F.R. § 1.76. The ADS is required to include a list of domestic benefit information.

27.     The domestic benefit information is defined by 37 C.F.R. § 1.76(b)(5) to include the relationship of each application for which a benefit is claimed under 35 U.S.C. § 120.

28.     The ADS did not correctly identify the relationship between the '507 Application and the '753 Application.

29.     The first paragraph of the application identified the relationship as a continuation-in-part application. However, 37 C.F.R. § 1.76(d)(1)(i) states that the most recent ADS will govern with respect to domestic benefit.

30.     All of the figures contained in the '507 Application are different than the figures in the '753 Application, which the '507 Application purportedly claims priority to.

31.     The specification of the '507 Application also includes details which were not included in the '753 Application.

32.     As filed, the '507 Application contained twenty claims. The claims were not entitled to priority to and the benefit of the earlier filing date of the '753 Application, as the '753 Application does not provide a written description under 35 U.S.C. §112 for each of the features of the claims.

33. Between the filing date of the '753 Application and the filing date of the '507 Application, Congress enacted the Leahy-Smith America Invents Act ("AIA"), which among other items, changed the framework for evaluating the patentability of claims in a patent.

34. The AIA established a first-inventor-to-file framework for determining patentability.

35. Under the first-inventor-to-file framework, as defined in 35 U.S.C. § 102(a)(1) and (a)(2) "a person shall be entitled to a patent unless—

1.  the claimed invention was patented, described in a printed publication, or in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention; or

2.  the claimed invention was described in a patent issued under section 151, or in an application for patent published or deemed published under section 122(b), in which the patent or application, as the case may be, names another inventor and was effectively filed before the effective filing date of the claimed invention."

36. The new 35 U.S.C. § 102 section has a critical date of March 16, 2013, meaning that for applications and patents having an effective filing date on or after March 16, 2013, the first-inventor-to-file framework applies.

37. In contrast, the pre-AIA framework applies to applications and patents having an effective filing date before March 16, 2013.

38. 35 U.S.C. § 100(i) defines "effective filing date" for a claimed invention as "(A) if subparagraph (B) does not apply, the actual filing date of the patent or the application for the patent containing a claim to the invention; or (B) the filing date of the earliest application for which the patent or application is entitled, as to such invention, to a right of priority under section 119, 365 (a), or 365 (b) or to the benefit of an earlier filing date under section 120, 121, or 365 (c)".

6

39. Since the '507 Application was filed after March 16, 2013 and purportedly claims the benefit of a filing date prior to March 16, 2013, the application is a transition application.

40. The rule for claiming the benefit of earlier filing date, 37 C.F.R. § 1.78, was amended to include a requirement for claiming the benefit of a prior file non-provisional application, that the Applicant must state whether the application contains, or contained at any time, a claim to a claimed invention that has an effective filing date on or after March 16, 2013. 37 C.F.R. §1.78(c)(6).

41. The ADS form includes a box to check to make the required statement.

42. At the time of filing and throughout the prosecution of the '507 Application, GPS did not identify to the USPTO that the application contains, or contained at any time, a claim to a claimed invention that has an effective filing date on or after March 16, 2013.

43. The USPTO requires the statement such that the Examiner can apply the correct legal framework to examine the application: first-to-invent framework (pre-AIA) or first-inventor-to-file framework (post-AIA).

44. Absent the statement from the applicant, the USPTO examines a transition application under the first-to-invent framework.

45. The '507 Application was examined under the first-to-invent framework, but should have been examined under the first-inventor-to-file framework.

46. Since GPS did not provide the required statement and identify to the USPTO that the application contained a claim to a claimed invention that has an effective filing date on or after March 16, 2013, the USPTO did not apply the correct legal framework to examine

the claims of the '303 Patent; the '303 Patent did not issue based on a full and fair examination of the claims.

47. In an Official Communication, the Examiner amended claim 1 and claim 8 of the '507 Application. The amendment added the language "top portion of the" into claim 1 and claim 8. A copy of the Official Communication is attached as Exhibit E.

48. The Official Communication also reads "Device of US patent 4,809,127 is inverted when compared to the claimed invention which recites at least one wire extending from the top portion of the device".

49. The '303 Patent was printed without the language added to claim 1 and claim 8 from the Examiner's Amendment.

50. Upon information and belief, GPS will file a request for a certificate of correction to perfect the claims such that the claim language added by the Examiner is included in the '303 Patent.

## Nature of the Controversy Between the Parties

51. There is a real, immediate, substantial and justiciable controversy between Plasma Air and GPS regarding the validity of the '303 Patent.

52. By letter of April 10, 2014, counsel for GPS accused Plasma Air of copying a product of GPS that is purportedly covered by, at that time, the '639 Publication (which was pending at the time).

53. By letter of December 2, 2014, counsel for GPS accused Plasma Air of "complete disregard of GPS' intellectual property" by distributing and selling its Model PA 600 ionization device.

54. The December 2, 2014 letter asserts that the Model PA 600 ionization device is "a direct copy of GPS' device that is disclosed in" the '639 Publication (which was pending at the time).

55. The letter further demanded, among other items, a statement of the number of Model PA 600 ionization devices in inventory, written assurance that Plasma Air immediately cease any further promotion, advertisement, distribution, sale and manufacture of Model PA 600.

56. By letter December 15, 2014, counsel for Plasma Air notified GPS's counsel that the '507 Application had an effective filing date of September 2013. A copy of the letter is attached as Exhibit D.

57. The December 15, 2014 letter also informed counsel for GPS that the '507 Application is under the first-inventor to-file framework and that, upon information and belief, GPS was well aware of products meeting the claims of the '507 Application, including GPS's products, have been on the market prior to September 2013.

58. Based on the foregoing, Plasma Air has adverse legal interests with GPS, and moreover, reasonably apprehends a patent infringement lawsuit from GPS on the '303 Patent, which issued on May 5, 2015, such apprehension including a corrected version of claim 1 and claim 8.

59. The dispute is thus real and immediate. Plasma Air needs clarity on the '303 Patent which, upon information and belief, is both invalid and unenforceable.

## Count I
## Declaratory Judgment of Invalidity of the '303 Patent

60. Plasma Air re-alleges and incorporates by reference the allegations in paragraphs 1 to 59above.

61. This action arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and under the patent laws of the United States of America, Title 35 of the United States Code.

62. There is a real, immediate, substantial and justiciable controversy between Plasma Air and GPS concerning whether the claims of the '303 Patent (including a corrected version of the claims) are invalid for failure to comply with the statutory requirements of Title 35 of the United State Code, including, without limitation, §§ 101, 102, 103 and 112.

63. The claims of the '303 Patent (including a corrected version of the claims) are invalid for failure to comply with the statutory requirements of Title 35 of the United State Code, including, without limitation, §§ 101, 102, 103 and 112.

64. Plasma Air is entitled to a judicial declaration that the claims of the '303 Patent (including a corrected version of the claims) are invalid.

**Count II**
**Declaratory Judgment of Invalidity and Unenforceability**
**of the 303 Patent due to Inequitable Conduct**

65.     Plasma Air re-alleges and incorporates by reference the allegations in paragraphs 1 to 64 above.

66.     This action arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and under the patent laws of the United States of America, Title 35 of the United States Code.

67.     There is a real, immediate, substantial and justiciable controversy between Plasma Air and GPS concerning whether the claims of the '303 Patent (including a corrected version of the claims) are invalid and unenforceable on grounds of inequitable conduct manifest during the prosecution of the application for the '303 Patent in the United States Patent and Trademark Office.

68.     On information and belief, GPS knowingly and intentionally failed to disclose to the USPTO that the '507 Application contains, or contained at any time, a claim to a claimed invention that has an effective filing date on or after March 16, 2013.

69.     At the time of filing of the '507 Application, GPS identified the '507 Application as being a continuation application of the '753 Application on the ADS rather than a continuation-in-part.

70.     Additionally, at the time of filing the '507 Application, GPS failed to identify that the '507 Application contains, or contained at any time, a claim to a claimed invention that has an effective filing date on or after March 16, 2013.

11

71. Even after counsel for Plasma Air informed GPS's counsel by letter that the effective date for the '507 Application was September 9, 2013, GPS continued to mislead the USPTO by failing disclose to the USPTO that the '507 Application contains, or contained at any time, a claim to a claimed invention that has an effective filing date on or after March 16, 2013.

72. Upon information and belief, the Examiner relied on the failure to identify the '507 Application as containing, or contained at any time, a claim to a claimed invention that has an effective filing date on or after March 16, 2013 and examined the claims under the first-to-invent framework.

73. GPS was aware that the Examiner applied the first-to-invent framework to examine the claims of the '507 Application.

74. Upon information and belief, but for the intentional misrepresentation to the USPTO, the Examiner would have applied the first-inventor-to-file framework to the claims of the '507 Application and prior art that was available under the first-inventor-to-file framework, would have been available for the Examiner to reject the claims.

75. Upon information and belief, but for the intentional misrepresentation to the USPTO, the USPTO would have rejected the pending claims of the '507 Application based on prior art that was available under the first-inventor-to-file framework or a combination of prior art available under the first-inventor-to-file framework with other prior art.

76. Upon information and belief, the failure was intentional because GPS was aware of intervening prior art, namely, prior art that is dated between date of October 14,

2009 and the effective filing date of September 9, 2013 that would render the claims of the pending '507 Application unpatentable.

77. For example, upon information and belief, GPS's own product brochure for the GPS-2400 was a printed publication that was publically available more than one year before the effective filing date of September 9, 2013.

78. Upon information and belief, the GPS-2400, which is GPS's own product, was sold more than one year before the effective filing date of September 9, 2013.

79. GPS also failed to disclose to the USPTO that the GPS-2400 was sold before the effective filing date of September 9, 2013.

80. GPS also failed to disclose to the USPTO that the product brochure for the GPS-2400 was publically available before the effective filing date of September 9, 2013.

81. Ion generating devices that render the claims of the '303 Patent unpatentable were also on-sale in China before the effective filing date of September 9, 2013.

82. Foreign sales are prior art under the first-inventor-to-file framework (post-AIA), but are not prior art under the first-to-invent framework (pre-AIA).

83. Thus, had GPS disclosed to the USPTO that the '507 Application contains, or contained at any time, a claim to a claimed invention that has an effective filing date on or after March 16, 2013, the claims of the '507 Application would have been rejected in view of the foreign sales of the ion generating devices.

13

84. As a direct and proximate consequence of this series of intentional acts of inequitable conduct before the United States Patent and Trademark Office, GPS obtained the '303 Patent which would not have issued but for the acts.

85. As a direct and proximate consequence of this series of intentional acts of inequitable conduct, the '303 Patent (including a corrected version of the claims) is invalid and unenforceable.

WHEREFORE, Plaintiff Plasma Air prays that the Court enter judgment in its favor and against the Defendant GPS as follows:

    A. Declaring that all of the claims of the '303 Patent (including a corrected version of the claims) are invalid.

    B. Declaring that all of the claims of the '303 Patent (including a corrected version of the claims) are unenforceable due to inequitable conduct.

    C. Declaring this case an exceptional case in favor of Plaintiff Plasma Air and awarding attorney's fees pursuant to 35 U.S.C. § 285.

    D. Awarding costs and expenses.

      E.      Awarding any and all such other relief as the Court deems to be just and proper.

Date: September 9, 2015                  Respectfully submitted,

                                          */s/ Stephen P. McNamara*
                                          Stephen P. McNamara, ct01220
                                          ST. ONGE STEWARD JOHNSTON & REENS, LLC
                                          986 Bedford Street
                                          Stamford, Connecticut 06905-5619
                                          Telephone: (203) 324-6155
                                          Email: smcnamara@ssjr.com
                                          litigation@ssjr.com

                                          *Attorneys for Plaintiff*
                                          *Plasma Air International, Inc.*

Of Counsel:

Seth Weinfeld (pending *pro hac vice*)
SCULLY, SCOTT, MURPHY & PRESSER, P.C.
400 Garden City Plaza, Ste 300
Garden City, New York  11530
Telephone: (516) 742-4343
Email: sweinfeld@ssmp.com

**CERTIFICATE OF SERVICE**

This is to certify that a true and accurate copy of the foregoing FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT OF PATENT INVALIDITY AND UNFORCEABILITY was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

<u>September 9, 2015</u>                                                         */s/ Jessica L. White*
Date