**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

PLASMA AIR INTERNATIONAL, INC.,
                                        Plaintiff,


                v.                                          Case No.: 3:15-cv-01054-RNC


GLOBAL PLASMA SOLUTIONS, LLC,
                                        Defendant.



**PLAINTIFF PLASMA AIR INTERNATIONAL, INC'S**
**MEMORANDUM OF LAW IN OPPOSITION TO**
**GLOBAL PLASMA SOLUTIONS, LLC MOTION TO DISMISS**

## **TABLE OF CONTENTS**

Relevant Factual Background ................................................................................................3

ARGUMENT ........................................................................................................................5

    I.      CNS is ambiguous and Not Unconditional..............................................................5

    II.     The Court should maintain jurisdiction over the Invalidity and
           Unenforceability Claims ...............................................................................10

    III.    The Invalidity and Unenforceability Issue has Independent
           Jurisdiction under 35 U.S.C. § 285.. ...........................................................13

Conclusion .........................................................................................................................16

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Already, LLC v. Nike, Inc.*,
        133 S. Ct. 721 (2013) ...................................................................................5, 6, 7

*Amana Refrigeration Inc. v. Quadlux, Inc.*,
        172 F.3d 852 (Fed. Cir. 1999) ..........................................................................9, 10

*Benitec Austl., Ltd. v. Nucleonics, Inc.*,
        495 F.3d 1340 (Fed. Cir. 2007) ...................................................................11, 12

*Buckhannon Bd. & Care Home, Inc., v. W. Va. Dep't of Health & Human Res.*,
        121 S. Ct. 1835 (2001). ................................................................................13, 14

*Cardinal Chem. Co. v. Morton Int'l, Inc.*,
        113 S.Ct. 1967 (1993) ...................................................................................11

*Crossbow Technology, Inc., v. Yh Technology, Yunchun Yang, Yi Yang*,
        2007 U.S. Dist. LEXIS 25926 (N.D. Cal. Mar. 26, 2007) ...............................10

*Dow Jones & Co. v. Ablaise Ltd.*
        606 F.3d 1338 (Fed. Cir. 2010) ......................................................................8

*Fort James Corp. v. Solo Cup Co.*,
        412 F.3d 1340 (Fed. Cir. 2005) .....................................................................11

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
        120 S. Ct. 693 (2000) .....................................................................................5

*Highway Equip. Co. v. FECO Ltd.*,
        469 F.3d 1027 (Fed. Cir. 2006) ...................................................................13, 14

*Higher One, Inc. v. TouchNet Info. Sys.*,
        No. 3:10CV1435, 2014 U.S. Dist. LEXIS 135729 (D. Conn. September 26, 2014) .........8

*Janssen Pharmaceutica, N.V. v. Apotex, Inc.*,
        540 F.3d 1353 (Fed. Cir. 2008) ...................................................................8, 10

*MedImmune, Inc. v. Genentech, Inc.*,
        127 S. Ct. 764 (2007) ...................................................................................5, 6

*Monsanto Co. v. Bayer Bioscience N.V.*,

iii

514 F.3d 1229 (Fed. Cir. 2008) ..................................................................13, 15

*NRDC v. Johnson*,
461 F.3d 164 (2d. 2006) ...................................................................... 14

*PerfectVision Mfg., Inc. v. PPC Broadband, Inc.*,
951 F.Supp.2d 1083 (E.D. Ark. 2013) ..................................................9

*Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*,
556 F.3d 1294 (Fed. Cir. 2009) ..............................................5, 6, 8, 9, 13

*Rice Services, LTD v. United States*,
405 F.3d 1017 (Fed. Cir. 2005) ..........................................................14

*Samsung Elec. Co. v. Rambus Inc.*,
440 F. Supp. 2d. 495 (E.D. Va. 2006) ..............................................14, 15

*SanDisk Corp. v. STMicroelectrtonics, Inc.*,
480 F.3d 1372 (Fed. Cir. 2007) ............................................................9

*Super Sack v. Chase Packaging Corporation*,
57 F.3d 1054 (Fed. Cir. 1995) ......................................................8, 9, 10

## <u>Statutes</u>

35 U.S.C. § 285 ................................................................................ *passim*

35 U.S.C. § 271(a) .................................................................................7

35 U.S.C. § 271(b) .................................................................................7

35 U.S.C. § 271(c) ..............................................................................7, 8

The Motion to Dismiss filed by Global Plasma Solutions, LLC ("GPS") should be denied. There are significant disputes regarding the conditional wording of the covenant not to sue and its effect on the relief being sought by the Declaratory Judgment Complaint.

The Declaratory Judgment Complaint filed by Plasma Air International, Inc. ("Plasma Air") alleges that U.S. Patent No. 9,025,303 ("the '303 Patent") is invalid and unenforceable. As a result, Plasma Air has requested damages under 35 U.S.C. § 285 as an exceptional case based on a blatant disregard of the patent rules and inequitable conduct during the prosecution of the application which became the '303 Patent by GPS.

GPS's covenant not to sue still leaves a case of substantial controversy and sufficient immediacy under the totality of the circumstances test to support jurisdiction because (1)the covenant not to sue does not make it absolutely clear that Plasma Air will not be threatened with an infringement claim by the same invalid and unenforceable patent (2) the covenant not to sue does not moot the issues of invalidity and unenforceable, due to in part that, GPS has a pending continuation application, having substantially the same claims as the '303 Patent, which leaves Plasma Air subject to the same threats of infringement; and (3) Plasma Air's claim for damage under 35 U.S.C. § 285 has independent jurisdiction.

Moreover, as the Declaratory Judgment Complaint does not request a ruling of non-infringement, GPS's only purpose for giving Plasma Air a covenant not to sue for infringement after Plasma Air filed this declaratory judgment complaint is to hide from its inequitable conduct and avoid an invalidity ruling.

Thus, the motion to dismiss should be denied.

**Relevant Factual Background**

The controversy over the '303 Patent started when GPS sent a letter to counsel for Plasma Air contending that Plasma Air copied a GPS product which was purportedly covered, by the then pending patent application, which issued as the '303 Patent. Complaint, Exhibit B [Document 1]. GPS sent a second letter to counsel for Plasma Air accusing Plasma Air of directly copying the device, which was disclosed in the pending patent application. Complaint, Exhibit C [Document 1]. The second letter also demanded Plasma Air to cease and desist all sales. *Id.*

Plasma Air responded to the baseless allegations noting that any patent that issued from the pending application is invalid based on prior art, a defective claim of priority and inequitable conduct. Complaint, Exhibit D [Document 1]. Incredibly, GPS did not even file an Information Disclosure Statement ("IDS") to inform the Patent Office of its own products which were admittedly publically available and purportedly covered, by the then pending application. Complaint, Exhibit B [Document 1] (admitting availability). In fact, GPS still has not submitted an IDS with the same or even notified the Patent Office of the instant litigation in a continuation application from the application which issued as the '303 Patent. Declaration of Seth Weinfeld, ¶¶16-18, Exhibit D.

GPS is aggressive in enforcing its patents. GPS has sued, without basis, Plasma Air in the Northern District of Georgia on June 12, 2015, for allegedly infringing another of its patents based on a different product. Declaration of Seth Weinfeld ¶20, Exhibit F. In fact, GPS amended the complaint to add a distributor of Plasma Air. Declaration of Seth Weinfeld ¶ 20. Plasma Air filed counterclaims against the other patent asserting that the patent is also invalid and unenforceable based on similar inequitable conduct. Declaration of Seth Weinfeld ¶ 21, Exhibit G.

3

In view of GPS's aggressiveness in enforcing patents and accusations that Plasma Air copied a device covered by the pending application which issued as the '303 Patent, Plasma Air was forced to seek this declaratory judgment of invalidity and unenforceability to protect its rights.

On July 27, 2015, after Plasma Air filed the Declaratory Judgment Complaint, GPS provided a covenant not to sue on the '303 Patent, "as it presently reads". Declaration of Seth Weinfeld ¶4, Exhibit A. This original covenant not to sue did not include the Examiner's amendment made during prosecution, which was not incorporated in the issued claims. Declaration of Seth Weinfeld ¶¶4-5, Exhibit A. Not satisfied with the scope of the covenant not to sue, Plasma Air refused to withdraw the Declaratory Judgment Complaint. Declaratory of Seth Weinfeld ¶19, Exhibit E. Counsel for the parties spoke regarding the scope of the original covenant not to sue. Declaration of Seth Weinfeld ¶22.  Counsel for GPS stated that he believed that a certificate of correction was already filed and that it was not intended for the covenant not to include the amended claim language. Declaration of Seth Weinfeld ¶23. In an effort to resolve the matter without judicial intervention, Plasma Air granted GPS a two week extension of time to answer, move or otherwise plead in response to the Declaratory Judgment Complaint. Declaration of Seth Weinfeld ¶24.

On August 17, 2015, GPS provided revised the covenant not to sue  to include the language from the Examiner's Amendment, among other revisions. Declaration of Seth Weinfeld ¶¶25 and 27, Exhibit H.  But, the revised covenant did not address counsel for Plasma Air's concerns expressed in a voicemail to counsel for GPS. Declaration of Seth Weinfeld ¶¶26 and 28.

Additionally, the revised covenant does not include current or existing methods, which was included in the original covenant. *Cf* Declaration of Seth Weinfeld, Exhibit A and Exhibit H. The revised covenant also does not include "use" or "importation", which was included in the original

4

covenant. *Cf* Declaration of Seth Weinfeld, Exhibit A and Exhibit H.  The revised covenant not to sue is also ambiguous whether the covenant not to sue covers future sales or activity. Declaration of Seth Weinfeld, Exhibit H.

In another attempt to resolve the matter without judicial intervention, Plasma Air agreed to give GPS another extension to file an answer, move or otherwise plead. Declaration of Seth Weinfeld ¶29. However, the second extension was met with this Motion to Dismiss. Declaration of Seth Weinfeld ¶30.

**ARGUMENT**

      I.      **CNS is ambiguous and Not Unconditional**

Plasma Air and GPS continue to have a dispute and controversy over the invalidity and unenforceability of the '303 Patent based on the "totality of the circumstances"; and thus, GPS's ambiguous covenant not to sue dated August 17, 2015 ("CNS") Plasma Air does not fully resolve any case or controversy *vis-à-vis* the '303 Patent.  *See MedImmune, Inc. v. Genentech, Inc.*, 127 S. Ct. 764 (2007) and *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721 (2013).

"A defendant cannot automatically moot a case simply by ending its unlawful conduct once sued." *Already,* 133 S. Ct. at 727.  Plasma Air filed this declaratory judgment complaint prior to the execution of the CNS, thus, GPS has the burden of showing that it is absolutely clear that GPS could not reasonably be expected to resume its enforcement efforts against Plasma Air. *Id.* citing (*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc*., 120 S. Ct. 693 (2000)).

GPS will not be able to meet the burden.  Whether a covenant not to sue will divest the trial court of jurisdiction depends on what is covered by the covenant." *Revolution Eyewear, Inc. v.*

*Aspex Eyewear, Inc*., 556 F.3d 1294 (Fed. Cir. 2009). Specifically, based on the language of the CNS, it is not "absolutely clear" that Plasma Air will not be subject to another infringement claim based on the invalid and unenforceable '303 Patent.

A CNS does not necessarily divest the court of declaratory judgment jurisdiction. *Id.*  But rather, the Court can determine that a declaratory judgment is still available when the facts "under all the circumstances, show that there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality". *MedImmune*, 127 S. Ct. at 771.

Such is the circumstances in this case. GPS is attempting to avoid having its patent invalidated and declared unenforceable by giving Plasma Air a *conditional and ambiguous* CNS, but at the same time, has a pending continuation application having substantially the same claims. Declaration of Seth Weinfeld ¶¶7-18, Exhibits B-D.

The terms of the CNS are ambiguous and contain conditions. In *Already*, the Supreme Court determined that "given the breadth of the covenant [Nike's enforcement of its trademark] cannot reasonably be expected to recur." *133 S. Ct. at 732*. The Court looked at several factors for the determination including (1) the covenant was unconditional and irrevocable; (2) it prohibited Nike from making any claim or any demand; (3) it reached beyond Already to protect Already's distributors and customers; and (4) it covered past and current designs as well as any colorable imitations. *See Id. at 728*.

In contrast to the covenant not to sue in *Already*, the instant CNS is ambiguous, more limiting and contains conditions.  For example, the CNS does not explicitly include language

regarding "use".  However, the '303 Patent contains method claims: one independent claim and three dependent claims.[1]  A method claim can be infringed by "using" the method.

35 U.S.C. § 271(a) recites "[e]xcept as otherwise provided in this title, whoever without authority makes, *uses*, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent". 35 U.S.C. § 271(a) (emphasis added). 35 U.S.C. § 271(a) is referred to as direct infringement. Therefore, the CNS is ambiguous whether GPS can assert that a downstream customer, such as a contractor, whom places an ion generator device within a housing of an air handler unit infringes the '303 Patent under 35 U.S.C. §271(a). Given that the CNS does not unambiguously cover downstream customers for this activity or "use", jurisdiction should remain with the Court. *See Already,* 133 S. Ct. at 728 (recognizing the importance of a covenant protecting downstream customers).

Moreover, the Patent Act also includes provisions for inducement and contributory infringement. 35 U.S.C. §§ 271(b) and 271 (c). 35 U.S.C. § 271(b) recites "[w]hoever actively induces infringement of a patent shall be liable as an infringer". *Id.* at 271(b). 35 U.S.C. § 271(c) recites "[w]hoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such

---

[1] Claim 17 reads: A method of producing ions, comprising: providing an ion generator device including a base, a first and second pair of spaced-apart, opposed sidewalls projecting from the base to collectively form an interior storage compartment and to define an upper edge, a top portion engaged to the upper edge, at least one high voltage wire extending from the device, a power supply for providing a voltage to the high voltage wire for producing ions; and placing the ion generator device within the housing of the air handler unit.

patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer". *35 U.S.C.* § 271(c). Inducement and Contributory Infringement is referred to as indirect infringement. The CNS is also ambiguous whether GPS can assert that Plasma Air indirectly infringes the '303 Patent by providing an ion generator, in the future, having the same design as currently existing products, which is then used by a downstream customers, such as a contractor, whom places an ion generator device within the housing of an air handler unit.

In contrast, cases relied on by GPS have covenants that include language explicitly covering "use". *See, e.g.*, *Dow Jones & Co. v. Ablaise Ltd*. 606 F.3d 1338, 1345 (Fed. Cir. 2010); *Janssen Pharmaceutica, N.V. v. Apotex, Inc*., 540 F.3d 1353, 1363 (Fed. Cir. 2008).

Additionally, the CNS does not explicitly include language regarding importation.

Moreover, the CNS is ambiguous whether it covers future sales of Plasma Air's existing products. *Revolution Eyewear*, 556 F.3d at 1298; See also *Higher One, Inc. v. TouchNet Info. Sys*., No. 3:10CV1435, 2014 U.S. Dist. LEXIS 135729, at *14 (D. Conn. September 26, 2014). The *Revolution* the covenant read:

> Revolution and counter-defendant Gary Zelman hereby unconditionally covenant not to sue Aspex for patent infringement under the '913 patent based upon any activities and/or products made, used or sold on or before the dismissal of this action. *Id.*

The Parties understood that the covenant did not protect the Defendant from a suit on future marketing of its bottom-mounted eyewear products, which had been previously marketed before the covenant. *Revolution Eyewear*, 556 F.3d at 1296.  The Federal Circuit distinguished *Super Sack* where there was an understanding that the covenant applied to products as they existed at the time of

the suit, even if the products were made and sold in the future. *Id.* at 1298 (the covenant in Super

Sack contained similar language as the covenant in Revolution).  Thus, in *Revolution*, the Federal

Circuit reversed the District Court's holding that the covenant not to sue ousted the court's

jurisdiction. 556 F.3d at 1300.

GPS asserts that the CNS uses similar language as the covenant in *Amana Refrigeration Inc.*

*v. Quadlux, Inc.*, 172 F.3d 852, 855 (Fed. Cir. 1999).   *See* Motion to Dismiss at p. 6. However, while

the CNS may have used similar language to the covenant in *Amana*, as can be seen by the different

interpretations of similar language in the covenants in *Revolution* and *Super Sack*, the CNS can be

subject to an interpretation similar to the covenant in *Revolution* due to the ambiguity.

Additionally, GPS has engaged in a course of conduct that shows a preparedness and

willingness to enforce its patent rights. *SanDisk Corp. v. STMicroelectrtonics, Inc.*, 480 F.3d

1372, 1383 (Fed. Cir. 2007); *see also PerfectVision Mfg., Inc. v. PPC Broadband, Inc.*, 951

F.Supp.2d 1083, 1092 (E.D. Ark. 2013).

Plasma Air is concerned, based on GPS's previous attempts to enforce its invalid and

unenforceable patents and patent applications (including the pending litigation in the District

Court of the Northern District of Georgia), that Plasma Air could be subject to another baseless

litigation filed by GPS due to the ambiguous and conditional language of the covenant.

Even before the '303 Patent issued, GPS sent two letters accusing Plasma Air of copying

the purported technology; GPS also send letters to Plasma Air regarding a related patent, namely

U.S. Patent No. 8,873,215 ("the '215 Patent"), also prior to issuance (*See* Exhibits B and C,

Complaint [Document 1]; GPS filed a lawsuit against Plasma Air in the Northern Distinct of

9

Georgia alleging infringement of the '215 Patent and amended the complaint to add one of

Plasma Air's distributors. Declaration of Seth Weinfeld ¶20, Exhibit F. GPS also filed a

continuation application, respectively on each of the '303 Patent and the '215 Patent, seeking

addition protection. Declaration of Seth Weinfeld ¶7-18, Exhibits B-D.

Thus, the ambiguous and conditional language in the CNS does not remove a specter of

future claims, but rather leaves open the possibility of future claims against Plasma Air.

Accordingly, GPS will not be able to demonstrate that its CNS is of sufficient breath and force

that Plasma Air can have no "reasonable anticipation of future patent infringement claim from"

GPS.

## II.     The Court should maintain jurisdiction over the Invalidity and Unenforceability Claims

Unlike the cases relied on by GPS, the instant case is only about whether the '303 Patent

is invalid and unenforceable. *See, e.g., Super Sack v. Chase Packaging Corporation*, 57 F.3d

1054 (Fed. Cir. 1995) (Patentee sued Defendant for infringement; Defendant Counterclaimed for

non-infringement and invalidity); *Amana Refrig*. 172 F.3d 852 (Declaratory Judgment Plaintiff

sought declaratory judgment of non-infringement and invalidity); *Crossbow Technology, Inc., v.

Yh Technology, Yunchun Yang, Yi Yang*, 2007 U.S. Dist. LEXIS 25926 (N.D. Cal. Mar. 26,

2007) (Patentee sued Defendants for infringement; Defendants counterclaimed for non-

infringement and invalidity); *Janssen*, 540 F.3d 1353 (Patentee sued Defendant for infringement;

Defendant counterclaimed for non-infringement).

In contrast, Plasma Air allegations are that the '303 Patent is invalid and unenforceable.

The CNS does not moot these issues, but rather a controversy still exists over Plasma Air's

invalidity and unenforceability counts.  *See, e.g.*, *Fort James Corp. v. Solo Cup Co*., 412 F.3d 1340,1347-49 (Fed. Cir. 2005) (reversing the District Court decision that a jury's verdict of non-infringement coupled with a post-verdict covenant moots the counterclaims).

In *Fort James*, the Federal Circuit remanded the counterclaims, namely the claims of unenforceability on the basis of inequitable conduct and request for attorney fees, to the district court even after the Plaintiff offered a covenant not to sue on the patent after losing on the infringement issue.  *Id*. at 1349. The Federal Circuit relied on a previous Supreme Court decision which stated that "a counterclaim questioning the validity or enforceability of a patent raises issues beyond the initial claim for infringement that are not disposed of by a decision of non-infringement" Id. (citing *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 113 S.Ct. 1967 (1993)).

Like *Fort James*, Plasma Air's claims of invalidity and unenforceability of the '303 Patent raises issues beyond GPS's pre-Declaratory Judgment Complaint infringement claims, which are not disposed of by a CNS.

Therefore, there is still a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality, regarding the invalidity and unenforceability of the '303 Patent due to the blatant inequitable conduct by GPS.

GPS's reliance of *Benitec Austl., Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340 (Fed. Cir. 2007) is misplaced. Motion to Dismiss at p. 7. The Federal Circuit in *Revolution Eyewear,* recognized a difference between the facts in *Benitec* where the Plaintiff already had a statutory exemption from infringement and a case where there is no statutory exemption. 556 F.3d at 1298.  *Benitec*

does not create an absolute rule regarding the impact of a CNS on invalidity or unenforceability and its application should be limited to analogous facts.

Additionally, in *Benetic*, an intervening Supreme Court decision precluded an infringement claim based on the activities of the defendant and it was unclear if the defendant would ever file a New Drug Application under Hatch Waxman Act. 495 F.3d at 1346. In fact, in a Motion to Dismiss the Patentee's infringement complaint filed by the Defendant, the Defendant Nucleonics argued:

> Benitec has shot before there is even a target. Nucleonics' accused activities are directed to developing and submitting information to the U.S. Food and Drug Administration . . . and are therefore exempt from infringement under 35 U.S.C. § 271(e)(1). . .

*Benitec*, 495 F.3d at 1342.

The Defendant further argued

> it [would] not be ready to file a New Drug Application to manufacture and market a new drug product until at least 2010-2012, *if ever,* depending on the progress of its clinical trials. . . . As a result, Benitec lacks a statutory basis to sue for infringement at this time, and it is premature for this Court even to entertain such a claim. *Id.* at 1342. (emphasis added)

Thus, in absence of any intent by the party to file a future New Drug Application (and potentially infringe), coupled with the existing statutory exception, there was no threat of a lawsuit so as to give rise to the subject matter jurisdiction. *Id.* at 1349.

In contrast, as recognized by *Revolution Eyewear*, in a case like this, where there is no statutory exception like Hatch-Waxman Act to remove the threat of a lawsuit and where the CNS is ambiguous, the CNS does not prevent jurisdiction. 556 F.3d at 1297.

12

### III.     The Invalidity and Unenforceability Issue has Independent Jurisdiction under 35 U.S.C. § 285.

Plasma Air's claim that this case is exceptional under 35 U.S.C. § 285 and for damages on account of the inequitable conduct committed by GPS during the prosecution of the application which issued as the '303 Patent has independent subject matter jurisdiction. *Monsanto Co. v. Bayer Bioscience N.V.*, 514 F.3d 1229, 1241 (Fed. Cir. 2008). *See also Highway Equip. Co. v. FECO Ltd.* 469 F.3d 1027, 1033 (Fed. Cir. 2006) (affirming, based on Federal Circuit precedent, the district court's retention of jurisdiction of FECO's claim for attorney fees under 35 U.S.C. § 285) (internal citations omitted). Whether a case is exceptional under 35 U.S.C. § 285 arises under the patent act. *Id*.

Plasma Air is the prevailing party for purposes of 35 U.S.C. § 285 as the voluntary filing of the CNS as an Exhibit to GPS's motion to dismiss coupled with a request for this Court to dismiss the declaratory judgment complaint, is requesting  a judicially sanctioned change in the legal relationship of the parties. *Buckhannon Bd. And Care Home, Inc., v. W. Va. Dep't of Health and Human Res*., 121 S. Ct. 1835 (2001).

The Federal Circuit in *Highway* applied the Buckhannon rule noting that "the dispositive issue is thus whether [a] dismissal with prejudice had sufficient judicial imprimatur to constitute a 'judicially sanctioned change in the legal relationship of the parties'." *Highway*, 469 F.3d 1027 at 1034 (citing  *Buckhannon,*  121 S. Ct.  at 1840).  In distinguishing a previous case where the requestor was not the prevailing party (*Rice Services, LTD v. United States,* 405 F.3d 1017 (Fed. Cir. 2005), the Federal Circuit in *Highway* noted that

> the voluntary filing of the covenant in this case was designed to be
> judicially enforceable  and  was  the  basis  for  the  court's  order

> dismissing the claims with prejudice. The covenant was not simply an extra judicial promise made by one party to another outside the context of litigation.

*Id*. at 1035.

Similar to *Highway*, GPS voluntarily filed its CNS in this case in its Motion to Dismiss. By filing the CNS and requesting the Court to dismiss the declaratory judgment complaint, the CNS is designed to be judicially enforceable and it intended to be the basis for the Court's dismissing Plasma Air's declaratory judgment claims. GPS's CNS is not simply an extra judicial promise made by one party to another outside the context of litigation.

The only difference here is that GPS submitted the CNS before filing a patent infringement claim, such as a counterclaim to be voluntarily dismissed. *See Samsung Elec. Co. v. Rambus Inc*., 440 F. Supp. 2d. 495, 511 (E.D. Va. 2006) (holding that a dismissal of patent infringement counterclaims with prejudice following the patentee's covenants not to sue constitutes a disposition on the merits under 35 U.S.C. § 285).

However, the case or controversy based on the threat of infringement established a "legal relationship" between the parties, regardless of whether GPS filed a counterclaim or not. For purposes of the motion to dismiss, allegations in the complaint are presumed to be true. *NRDC v. Johnson*, 461 F.3d 164, 170 (2d. 2006). Thus, it is presumed true that there is a case or controversy based on GPS' threat of infringement. Therefore, the motion to dismiss based on the CNS is requesting "a judicially sanctioned change in the legal relationship of the parties." Allowing GPS to avoid a § 285 claim by filing a CNS before entering counterclaims, will in effect allow an owner of an unenforceable patent to reap the benefit of threatening law suits to scare off legitimate competitors

and/or customers without ever having to face a judicial challenge. Such conduct should not be condoned by this court.

Moreover, by giving Plasma Air a CNS and alleging that there is no case or controversy due to the scope of the CNS, GPS is effectively "voluntarily" dismissing a potential claim for infringement based on the '303 Patent, e.g., a change in a legal relationship. *See Samsung*, 440 F. Supp. 2d 495 at fn 16 (noting that a CNS itself effectuated a change in a legal relationship between the parties). In Samsung, Samsung was deemed the prevailing party where Rambus gave Samsung a CNS and voluntarily withdraw the infringement counterclaims. *Id.* ("That is especially so where, as here, the dismissal with prejudice reinforces a covenant not to sue which itself has effectuated a change, albeit without court order, in the legal relationship between the parties.").

35 U.S.C. § 285 encompasses the jurisdiction to make a finding of inequitable conduct. *See Monsanto*, 514 F.3d at 1242-43 (affirming district court's decision that three patents were no longer in suit as being unenforceable under section 285). In *Monsanto*, three patents were removed from the case based on a statement of non-liability and dismissal with prejudice by the patent holder. *Id*. Accordingly, in Monsanto, the Federal Circuit held that a district court has jurisdiction under § 285 to determine whether there is inequitable conduct in the prosecution of patents that are otherwise no longer in suit to hold such patents unenforceable for inequitable conduct. *Id.*

The inequitable conduct claims are intertwined with the issues of invalidity and unenforceability. *See* Complaint ¶¶64-81 [Document 1]. GPS's conduct during the prosecution of the application which issued as the '303 Patent is directly related to invalidity and unenforceability.

15

**Conclusion**:

      The present motion should be denied.

Date: September 9, 2015                Respectfully submitted,

                                        */s/ Stephen P. McNamara*
                                        Stephen P. McNamara, ct01220
                                        ST. ONGE STEWARD JOHNSTON & REENS, LLC
                                        986 Bedford Street
                                        Stamford, Connecticut 06905-5619
                                        Telephone: (203) 324-6155
                                        Email:  smcnamara@ssjr.com
                                        litigation@ssjr.com

                                        *Attorneys for Plaintiff*
                                        *Plasma Air International, Inc.*

Of Counsel:

Seth Weinfeld (pending *pro hac vice*)
SCULLY, SCOTT, MURPHY & PRESSER, P.C.
400 Garden City Plaza, Ste 300
Garden City, New York  11530
Telephone: (516) 742-4343
Email: sweinfeld@ssmp.com

**<u>CERTIFICATE OF SERVICE</u>**

This is to certify that a true and accurate copy of the foregoing PLAINTIFF PLASMA

AIR INTERNATIONAL, INC'S MEMORANDUM OF LAW IN OPPOSITION TO GLOBAL

PLASMA SOLUTIONS, LLC MOTION TO DISMISS was filed electronically and served by

mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to

all parties by operation of the court's electronic filing system or by mail to anyone unable to

accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this

filing through the court's CM/ECF System.

<u>September 9, 2015</u>                                                  *<u>/s/ Jessica L. White</u>*
Date

18